## LOESCH ALLOTMENT CO. et, v. NEWBURGH HEIGHTS (Village).

Common Pleas Court, Cuyahoga County.

No. 591,499. Decided July 31, 1950.

Fackler & Dye, Green, Woods, Lausche & Wilmot, Bulkley, Butler & Pillen, Cleveland, for plaintiffs.
Rolland Baskin, Joseph T. Eddel, Cleveland, for defendants.

## OPINION

By SILBERT, J.

The village of Newburgh Heights now has a population of about 4,200, which is about the same as it was in 1930. It has a total area of 59 square miles adjacent to the southern boundary of Cleveland; Cuyahoga Heights is immediately to the south of Newburgh Heights. That portion of Cleveland close to Newburgh Heights, substantially all of Cuyahoga Heights and an important part of Newburgh Heights have been developed with a variety of heavy industries. These heavy industries, many of which have been located in the area referred to about twenty-five years, include steel mills, oil refineries, a coke plant, railroad freight station, street car repair shop, stove manufacturing plant, foundries and chemical plants.

On December 30, 1947, the village of Newburgh Heights adopted Ordinance No. 1947-11 intended to zone the entire area of the village. The zoning ordinance established five use districts. The zoning adversely affects the property of the plaintiff.

The Loesch Allotment Company has, since 1907, owned a large tract of land in the northwest portion of the village of Newburgh Heights. In 1913 the said Loesch Allotment Company subdivided its property, and thereafter sold some lots

near Harvard Avenue on which residences were constructed. A large part of the Allotment Company's property has never been sold. There have been practically no sales of lots during the last 25 years. Because of the industrial development of the area, the physical characteristics of the property, the absence of streets and utilities, the property in question is now wholly unsuited for allotment or residential purposes.

In November, 1946, American Stove Company, at a cost of $517,500 purchased from Reconstruction Finance Corporation twelve acres of land on which was located a manufacturing plant. The factory had been constructed three or four years earlier with the assistance of the Federal Government for operation by Ohio Crankshaft, Inc., as a war plant. This property is on Harvard Avenue in the village of Newburgh Heights and adjoins the lands of the Allotment Company. The factory contains over 250,000 square feet of floor area.

The Stove Company desired to operate its factory with railroad switching facilities and acquired two additional tracts of land so that a spur track could be constructed connecting the factory with the tracks of the Newburgh & South Shore Railroad. In November, 1946, the Stove Company acquired 12.6 acres of unimproved land from the Allotment Company at a cost of $44,100. As part of the consideration, the Allotment Company also obtained the commitment of the Stove Company to construct a railroad switch over the land acquired and to give the Allotment Company the right to connect additional tracks to the switch to be constructed by the Stove Company. In February, 1947, the Stove Company purchased from Ohio Crankshaft, Inc., ten acres of unimproved land at a cost of $30,000. This completed the lands needed to connect the factory with the Newburgh & South Shore Railroad.

After Loesch Allotment Company sold the acreage mentioned to the Stove Company, the Allotment Company retained 46.4 acres of unimproved land. It consists of open fields through which there runs a creek. Sewage from some of the residences in Newburgh Heights empties into this creek which is at the bottom of a deep ravine. Part of the Allotment Company's land is used by the village as a public dump. There is a difference in elevation of about 75 feet from the high land to the bottom of the ravine. There are no streets, paving, sewers, water mains, or other public improvements in the area. There are no facilities for gas or electricity.

The Newburgh Heights zoning ordinance passed in December, 1947, restricts most of the property owned by the Allotment Company and the Stove Company for residential use. The remainder of the plaintiffs' lands are zoned for commercial

purposes. The Stove Company's factory building was constructed about five years before the zoning ordinance was passed. The industrial character of the area was established about 25 years ago and has continued to develop since that time. The lands have no practical value for residential or commercial purposes. Their only value is for industry. The zoning ordinance has the practical effect of confiscating the plaintiffs' lands.

The ordinance is assailed on the grounds that it is in derogation of the Fifth Amendment to the Constitution of the United States, and of the provisions of **Section 19 of Article I of the Constitution of Ohio**, in that it deprives plaintiffs of the value of their lands without adequate compensation. The plaintiffs seek an injunction permanently prohibiting the village of Newburgh Heights from enforcing the provisions of Ordinance No. 1947-11 with respect to their property and that the Stove Company be given the right to construct a railroad switch leading to its factory.

While the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions in a changing world. Although a degree of elasticity is imparted to the application of constitutional principles, statutes and ordinances, if they are found not to conform to the Constitution, they must fall. The ordinance now under review must find the justification in some aspect of the police power asserted for the public welfare. The ordinance cannot under the guise of the police power so unreasonably restrict the use of defendant's land that it is confiscatory.

The ordinance in question does not promote the public health, safety or welfare of the community by requiring lands in the midst of a heavy industrial area, lacking pavement and utilities, in part used as a public dump and elsewhere traversed by a creek into which raw sewage is emptied, to be used for residential or commercial purposes. This ordinance passes the bounds of reason and assumes the character of merely an arbitrary fiat. The principles of law just mentioned are stated by the Supreme Court of the United States in Village of Euclid v. Ambler Realty Co. 272 U. S., 365. Although the facts in the Village of Euclid case were entirely different and the ordinance was there upheld, the Supreme Court made it clear that zoning ordinances must be reasonable considering the existing circumstances, the rights of the landowners involved and the general welfare of the community.

The Ohio Supreme Court has in numerous cases passed upon

zoning ordinances. The general rule followed is that there is a presumption in favor of the validity of the ordinance. The court considering the constitutionality of the ordinance may not substitute its judgment for that of the legislative body passing the ordinance. It is well recognized, however, that all zoning represents an interference with the constitutional rights of property owners. So long as the ordinance falls under the reasonable exercise of police power to preserve the public health, morals or safety of the community, it should be upheld. When the ordinance cannot be found reasonably to preserve the public health, morals or safety of the community and is arbitrary and unreasonable, it must fall. See **Pritz v. Messer, 112 Oh St, 628.** At page 639 the court said:

"If the ordinance discloses no purpose to prevent some public evil or to fill some public need, and has no real or substantial relation to public health, morals and safety, it must be held void."

More recently the Ohio Supreme Court in **State ex rel Synod v. Joseph, 139 Oh St., 229, 22 O. O. 241,** sustained the Court of Appeals in ordering the issuance of a peremptory writ of mandamus to the respondents commanding them to grant a special permit for the erection of a church. The same principles referred to above were outlined and followed in that case.

The court finds that the Village of Newburgh Heights' zoning ordinance No. 1947-11 does not tend to preserve the public health, morals or safety of the community. On the contrary, it is arbitrary and unreasonable. It attempts to establish a residential and commercial district in an area not suited for those purposes and wherein heavy industries were established long prior to the passage of the ordinance.

The prayer of the plaintiffs' amended petition should be granted. The defendant will be enjoined from enforcing the provisions of the ordinance as to the lands of the plaintiffs. The American Stove Company is entitled to construct a railroad switch track leading to its property.